## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

GEOFFORY O. THORNES,

                                Civil No. 13- 546 (JRT/LIB)

                    Plaintiff,

v.

CITY OF WALDORF, ROBERT S.
VOGELSANG, ALAN K. FLEMMING,
KEVIN R. LINES, FRED D. GRUHLKE,
THOMAS J. TRAYNOR, SR., GARY
BURMEISTER, BRUCE URBATCH,
JUDITH M. KOHOUT, and CURTIS C.
COLLINS,

**MEMORANDUM OPINION AND
ORDER GRANTING MOTION
FOR JUDGMENT ON THE
PLEADINGS**

                    Defendants.

---

Geoffory O. Thornes, 121 Railroad Street, Post Office Box 418, St.  Clair, MN  56080, *pro se*.

Andrea B. Smith and Paul D. Reuvers, **IVERSON REUVERS CONDON**, 9321 Ensign Avenue South, Bloomington, MN  55438, for defendants.

In 2010, Plaintiff Geoffory O. Thornes acquired the J.A. Tyrholm Building in downtown Waldorf, Minnesota.  Part of the roof had collapsed, but Thornes intended to make the necessary repairs and ultimately preserve it as a historical building.  The City of Waldorf ("the City"), however, was concerned about the building's structural problems and the dangers they posed to pedestrians.  In January 2011, the City gave Thornes until July 1, 2011 to make all of the necessary repairs.  This was the beginning of several years of back and forth between Thornes and the City, which ultimately led the City to pass a resolution for the demolition of the building and to seek an order from a Minnesota state

district court to enforce the resolution.   In the midst of the state court proceeding, Thornes brought this action against the City and various individual city officials (collectively, "Defendants"), in which he alleges, among other things, that Defendants violated his Fourth and Fifth Amendment rights.   Defendants move for judgment on the pleadings, arguing that Thornes' claims are barred by res judicata and collateral estoppel because the state court already determined that the building was hazardous and authorized the City to demolish it.   The Court concludes that res judicata bars Thornes' claims because he could have fully and fairly litigated them in the state court proceeding. The Court will therefore dismiss the action with prejudice.

## BACKGROUND

Plaintiff Geoffory O. Thornes purchased the "Historic J.A. Tyrholm Building" (the "Tyrholm Building") in downtown Waldorf on November 9, 2010 for one dollar. (Am. Compl. ¶ 3, Aug. 14, 2013, Docket No. 31.)   The building was substantially damaged when Thornes bought the property: "the gable roof section had fallen onto the loft floor due to weak trusses and heavy snow load."  (*Id.* ¶ 2.)

## I.   ONGOING DISPUTE WITH CITY COUNCIL

On January 11, 2011, the City sent Thornes a letter stating that the City Council voted at its January 10, 2011 meeting that Thornes had until July 1, 2011 to have the "building completely repaired so as not to cause any safety issues for the residents of the community if they wish to walk by."  (*Id.*, Ex. C.)  The letter also stated that the City Council wanted to "view the building and have you explain what exactly it is you are

planning to do and the timeframe you are looking at." (*Id.*, Ex. C.)  Thornes replied to the City Clerk, Defendant Judith Kohout, in a letter dated February 10, 2011.  (*Id.*, Ex. E.)  He explained the precautions he had taken to keep pedestrians safe, and that because the "roof, thankfully, has collapsed **inward** . . . to my knowledge, **no** exterior walls are tending outward in direction and **should pose <u>no</u> danger** to the public." (*Id.*, Ex. E (emphasis in original).)  He also stated that "[o]f course, July 1, 2011 is quite unreasonable as a goal to have this building 'completely repaired' depending on what that means," and that "[t]o date, I have no clear target date for completion of the new roof." (*Id.*, Ex. E.)

Meanwhile, Thornes declared a historical restoration of the building and underwent efforts to develop community support, ideas, and funding for the project. (*Id.* ¶ 7-8.)  This involved posting a notice on four bulletin boards along Main Street in Waldorf, which Thornes alleges that the City Clerk has admitted to removing soon after he posted them.  (*Id.* ¶ 8.)  He also placed an "Idea/Guest Book" in the City library, which he alleges the City Clerk removed and has not returned.  (*Id.*)

On June 16, 2011, the City sent a letter requesting an update on repair efforts.  (*Id.* Ex. H.)  The letter summarized Thornes' and the City Council's past interactions regarding the building going back to October 2010, when the City Council inquired about a timeframe and contractors for repairs, which the letter asserted Thornes had still not supplied to the Council.  (*Id.*, Ex. H.)  The letter stated that at the June 13, 2011 Council meeting, Thornes was "asked again to come back to our next meeting on July 11, 2011 and be prepared with a timetable or status reports on your progress" and reiterated the

Council's request "to know how many hours you anticipate putting in this summer." (*Id.*, Ex. H.)   On July 11, 2011 – after the City's proposed July 1 deadline – Thornes responded to the City's June 16 letter.   (*Id.*, Ex. I.)   He requested copies of all conversations the City claimed to have had with him and asserted his right to know if he was being recorded at City Council meetings.  (*Id.*, Ex. I.)   He also stated that the City Clerk had informed him that she had taken down fliers he had posted about the building and questioned the propriety of that, observing also that "[t]he **intimidating nature** of some questions and comments at the June meeting did not allow for an explanation." (*Id.*, Ex. I (emphasis in original).)   He also provided a "status report," suggesting that he would not be hiring contractors because of the cost and instead would do the repairs himself, but that progress was slower than anticipated because of his job "situation" and because his son was not helping him over the summer as he anticipated.  (*Id.*, Ex. I.)

Thornes alleges that, "throughout the spring and summer months of 2011," he "performed substantial restoration and cleanup work" on the building, including a "major improvement [which] was to shore up and brace the upper storefront wall, thereby alleviating any public safety issues for the residents of the community."  (*Id.* ¶ 13.)  He also alleges that he "re-claimed approximately 16,000 lbs. . . . of quality lumber during the warmer months of 2010 and 2011 from dismantled buildings," and that he stacked the lumber in three locations within the building for future restoration work.  (*Id.* ¶ 14.)

On March 5, 2012 the City sent Thornes a letter informing him that, "pursuant to Minn. Stat. § 463.15, the Waldorf City Council intends to discuss at its City Council meeting on April 9, 2012 . . . the hazardous and substandard nature of your building . . . .

The ultimate passage of a resolution ordering you to make specific repairs to your property will be discussed." (*Id.*, Ex. L.)  The letter warned that "[i]f such repairs [we]re not made, the City of Waldorf w[ould] seek a court order to demolish and raze the structure." (*Id.*, Ex. L.)  The City sent Thornes another letter on March 20, 2012, inviting Thornes to a "Public Hearing regarding the building you own in Waldorf" on April 9, 2012, which would be "to discuss the options the City has, based on Minnesota Statutes, to deal with the hazardous conditions of your building and the fact that it has been without a roof since the Winter of 2009/2010." (*Id.*, Ex. M.)  The letter further stated that "[w]e have discussed this situation, in person and in writing, with you on numerous occasions and nothing much has been accomplished" and that the "Council will make a decision" at the April 9, 2012 meeting and that "[a] resolution regarding their decision will be voted on at that time." (*Id.*, Ex. M.)

Thornes responded to the City's letters on April 4, 2012, stating that, until he received the March letters, he "had assumed work completed thus far was adequate," again raising issues about the recording of City Council meetings, and asserting that "[t]here is no basis for the April 9, 2012 'Public Hearing'" and listing several reasons. (*Id.*, Ex. N.)  His reasons centered around both his assertions about the structural integrity of the building's roof and the historic nature of the building and community support for preserving it for historic purposes.  (*See id.*, Ex. N.)  Finally, he asked that the City "**[p]lease immediately advise the Council to CANCEL the April 9th 'Public Hearing'** as it does not conform to Minnesota statute and is a private property issue of harassment." (*Id.*, Ex. N (emphasis in original).)

The City nevertheless proceeded with the public hearing on April 9 during which it adopted Resolution Number 81 ("Resolution 81"), in which the City Council declared the building "to be a hazardous building." (*Id.*, Ex. P.) The resolution listed nine reasons for the designation as hazardous, including (1) the lack of roof, (2) the boarded up front of the building, (3) black mold in the interior, (4) the fact that progress toward restoration had been "mostly cosmetic rather than structural," (5) the danger the building posed to children, (6) the fact that Thornes had been given two deadlines, (7) the fact that the windows lacked glass, (8) lumber and debris inside the building, (9) the possibility of rodents in the vacant building. (*Id.*, Ex. P.) The resolution also stated that "a motion for summary enforcement of the order will be made to the District Court of Waseca County." (*Id.*, Ex. P.) Thornes was present for this meeting and alleges that he "**repeatedly** defended himself and his private property." (*Id.* ¶ 19 (emphasis in original).)

On May 18, 2012, the City sent a letter to Thornes indicating its desire to purchase the building and offering $5,000, which the City believed was "a generous offer based on the property's recently assessed value." (*Id.*, Ex. Q.) Thornes declined the offer in a letter dated May 24, 2012. (*Id.*, Ex. R.) In his decline letter he characterized the City's offer as "simply another 'policy or procedure' you . . . have to attempt to deprive myself of my Constitutional rights as a property owner" and listed corrections to Resolution 81. (*Id.*, Ex. R.)

On October 16, 2012, the City sent Thornes a letter advising him that the City had retained Defendant Fred Gruhlke, a licensed building official, to complete an assessment of the building. (*Id.*, Ex. T.) The letter explained that, after receiving Gruhlke's report,

the City Council approved Resolution Number 2012-84 ("Resolution 84"), which declared the property hazardous pursuant to Minn. Stat. §§ 463.15 and 463.261,[1] ordered Thornes to make a list of repairs within 45 days, and advised Thornes that if he failed to make the repairs the City would move for an enforcement order from the district court. (*Id.*, Ex. U.)   The letter included a notice of an appeal process: "You may appeal this Order by requesting a hearing before the City Council provided you make the **appeal within ten (10) days of receipt of this Order**." (*Id.*, Ex. T (emphasis in original).) Enclosed with the letter was a full copy of Resolution 84 and Gruhlke's assessment documents. (*Id.*, Exs. U, V, and W.)   Gruhlke's assessment stated that he inspected the property on September 13, 2012. (*Id.*, Ex. W.)   Thornes did not appeal pursuant to the process outlined in the City's notice, but on November 26, 2012, sent a letter outlining a settlement offer to the City seeking $80,000.   (*Id.* ¶ 29-31; *id.*, Ex. Z.)   The letter stated that if the proposed settlement was not accepted, he would file an action in federal court. (*Id.*, Ex. Z.)   The City did not respond.   (*Id.* ¶ 30.)

---

[1] Minn. Stat. § 463.15 is the definition section for chapter 463 of the Minnesota Statutes regarding Line Easements and Hazardous or Substandard Buildings and includes a definition for "[h]azardous building or hazardous property."   *See* Minn. Stat. ch. 463.   Minn. Stat. § 463.16 authorizes "[t]he governing body of any municipality [to] order the owner of any hazardous building or property within the municipality to correct or remove the hazardous condition of the building or property or to raze or remove the building."   Minn. Stat. § 463.16; *see also City of Barnum v. Sabri*, 657 N.W.2d 201, 206 (Minn. Ct. App. 2003) ("Minnesota's hazardous-building statute . . . authorizes the destruction of private property without compensation when a property owner fails to take steps to make needed repairs." (citing Minn. Stat. §§ 463.15–.261; *Village of Zumbrota v. Johnson*, 161 N.W.2d 626 (1968); *Ukkonen v. City of Minneapolis*, 160 N.W.2d 249 (1968))).

## II.     PROCEEDINGS IN WASECA COUNTY DISTRICT COURT ("WASECA COUNTY ACTION")

On February 7, 2013, the City filed a motion with the Waseca County District Court to enforce its order, of which Thornes received notice.  (*Id.* ¶ 31; *see also id.*, Ex. CC at 26.)[2]  Letters dated February 19 and 20, 2013 further gave notice of a hearing on a Motion for Summary Enforcement scheduled for March 8, 2013.  (*Id.* ¶ 33; *id.*, Ex. CC at 23-25.)  In the Motion for Summary Enforcement, the City alleged that it had adopted Resolution 84 finding the Tyrholm Building to be hazardous and that, although it had given Thornes forty-five days to make appropriate repairs, the City was now authorized to either "compel compliance with [the order] or to raze said hazardous building pursuant to Minn. Stat. §§ 463.15, 463.16, 463.152 and 463.261."  (*Id.*, Ex. DD at 28.)  The motion sought a judgment against Thornes and, among other things, an order enforcing Resolution 84 "authorizing the City of Waldorf to raze the hazardous building described in said Resolution."  (*Id.*, Ex. DD at 28.)

On March 7, 2013 – the day before the scheduled hearing in Waseca County District Court – Thornes filed the instant action in federal court against the City and various individual defendants, including the former and current Mayors, City Council members, and the City Clerk.  (Compl., March 7, 2013, Docket No. 1.)  The complaint included allegations that the City and individual defendants violated his rights under the Fourth and Fifth Amendments of the U.S. Constitution, conspiracy under 42 U.S.C. § 1985, and conversion.  (*Id.*)  The Waseca County hearing proceeded on March 8, 2013,

---

[2] Unless otherwise noted, all page citations refer to CMECF pagination.

which Thornes attended.  (*See* Ex., 2B (Waseca County District Court Am. Findings of Fact and Order for Summ. J.) at 10, Dec. 9, 2013, Docket No. 43; Reply, Ex. 1 (Waseca County District Court Am. Findings of Fact and Order for Summ. J.) at 1, Dec. 11, 2013, Docket No. 44.)[3]  At the hearing, Thornes informed the court of his recently filed federal action and asked about delaying the state court proceedings based on his filing in federal court.  (State Court Findings and Order ¶¶ 2-3.)  The court, finding that Thornes did not provide any legal basis for delaying the state court hearing, did not do so and instead stated that it retained jurisdiction over the matter.  (*Id.* ¶¶ 4-5.)  At the hearing, the City called two witnesses: the City Clerk and the building inspector, and Thornes cross-examined both witnesses.  (*Id.* ¶ 18.)  Thornes called one witness:  Alan Flemming, then Mayor of the City.  (*Id.*)

On April 4, 2013, the Waseca County District Court issued an Amended Findings of Fact and Order for Summary Judgment, declaring the building to be hazardous and ordering the City to enforce Resolution 84 and "remove and raze the hazardous building as the Resolution details with full authority of this Court."  (State Court Findings and

---

[3] Thornes attached the first page of the Amended Findings of Fact and Order for Summary Judgment in the Waseca County District Court action as Exhibit 2B to Docket No. 43 and the entire document is included as Exhibit 1 to Defendants' Reply.  Although the Court considers this motion under Federal Rule of Civil Procedure 12(c) on the pleadings, the Court properly considers this and other filings from the Waseca County action both because they are "'necessarily embraced by the complaint,'" *Cobb v. PayLease LLC*, --- F. Supp. 2d ---, 2014 WL 3611800, at *1 n.2 (D. Minn. July 22, 2014) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)), and because they are a matter of public record, *see Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) ("When ruling on a motion to dismiss under Rules 12(b)(6) or 12(c), a district court generally may not consider materials outside the pleadings," but "[i]t may, however, consider some public records . . . ." (internal citations omitted)).  The Court will refer to the document as "State Court Findings and Order," and use the ECF pagination found in Exhibit 1 to Defendants' Reply.

Order at 6-7.)   The court observed that the City Clerk had "described how the City Council had numerous council meetings and contact with [Thornes] over the years in an attempt to address the conditions on [Thornes]'s property," and that the building inspector "testified that he was able to conduct his inspection without going on [Thornes]'s property." (*Id.* ¶¶ 20, 23.)  The Mayor testified that "the City Council voted on the Resolution based on the Report of Gruhlke and based on information gathered at several meetings of the City Council over multiple years." (*Id.* ¶ 26.)

Also on April 4, 2013, the Waseca County District Court received a request from Thornes for permission to file a Motion for Reconsideration.  (*See* Reply, Ex. 2 at 1.) The court denied Thornes' request on the basis that "motions to reconsider are prohibited except by express permission of the court" which will be granted "only upon a showing that intervening legal developments have occurred" or "where the earlier decision is shown to be palpably wrong in some respect." (*Id.* (internal quotation marks omitted).) The court determined that Thornes had failed to demonstrate either circumstance and denied Thornes' request.  (*Id.* at 2-3.)  Thornes did not seek to appeal the Waseca County District Court's order for summary enforcement.  In June 2013 the Tyrholm Building was razed, as authorized by the Waseca County District Court Order.  (Am. Compl. ¶¶ 37-42.)

### III.   THIS ACTION

On August 14, 2013, Thornes filed an amended complaint in this action.  (*See generally id.*)  The Amended Complaint, although not a model of clarity, includes three

general categories of claims. (*See id.* at 14-18.)[4] First, under the header of "General," Thornes alleges, seemingly under 42 U.S.C. § 1983, that Defendants violated Thornes' Fourth and Fifth Amendment rights by conducting unauthorized inspections of his property and seizing and demolishing his property with deliberate indifference to and reckless disregard of his constitutional rights. (*Id.* at 14-15.) Second, under the header of "Conspiratory," Thornes alleges that "Defendants acted in concert per 42 U.S.C. § 1985 to make overtly false statements in their reports to justify demolition and removal of [his] private property," and "acted unreasonably and in concert to plan for, trespass on, and eventually, remove and destroy all of Plaintiff's property from his land." (*Id.* at 15.) Third, under the header of "Conversion," Thornes alleges that Defendants "acted intentionally and in reckless disregard for the rights of Plaintiff, in the exercise of attempting dominion or control over [his] personal property," and that "[t]hese unreasonable acts seriously interfered with [his] rights as a property owner in the state of Minnesota to enjoy and/or control his private property." (*Id.* at 15-16.) Thornes alleges that these violations caused him a variety of damages, including, among other things, loss of standing, "lost opportunities to raise community support for the 'Tyrholm Building' restoration project," "lost opportunities to earn income near his primary residence" and being forced "to move away from family and obtain secondary residence and employment in South Dakota," "trauma, humiliation, pain, suffering, ridicule, mental distress, mental anguish, and defamation of character," loss of "the respect and affection

---

[4] The Amended Complaint also adds one individual defendant, Curtis C. Collins, a City Council member. (Am. Compl. 3.)

of his family," and lost property.  (*Id.* at 16-17.)  He seeks $2 million as a result of these damages.  (*Id.* at 18.)

Defendants answered the amended complaint, and have now moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (Mot. for J. on Pleadings, Nov. 13, 2013, Docket No. 34; Answer, Aug. 21, 2013, Docket No. 33.)  First, they argue that Thornes' claims are barred by res judicata because the Waseca County District Court judgment was a final judgment on the merits and Thornes did not pursue any appeal, was based on proper jurisdiction, and involved the same parties and same claims as this action.  (Mem. in Supp. of Mot. for J. on Pleadings at 7, Nov. 13, 2013, Docket No. 36.)  They argue in the alternative that his claims are precluded by collateral estoppel.  (*Id.* at 8-9.)  Second, Defendants argue that they are entitled to various forms of immunity: quasi-judicial immunity for all defendants, absolute immunity for the elected officials, and qualified immunity for individual defendants.  (*Id.* at 9-10.)  Finally, they argue that Thornes' state law conversion claim is not actionable and barred by statutory immunity.  (*Id.* at 12.)  In his response, Thornes first notes that Defendants have failed to respond to several of his discovery requests.  (Mem. in Opp'n to Mot. for J. on Pleadings at 2, Dec. 9, 2013, Docket No. 40.)  He appears to argue, presumably in response to Defendants' res judicata argument, that the Waseca County action is not complete because he raised fraud claims in his motion for reconsideration that went unaddressed and there is "no Statute of Limitation concerning fraud."  (*Id.* at 4.)  Also in response to Defendants' res judicata argument, Thornes argues that at least one element is not met because the causes of action in the two cases are not the same because he is raising

constitutional claims that were not present in the Waseca County action.   (*Id.* at 5.) Finally, he also makes several responses to Defendants' immunity and conversion arguments.   (*Id.* at 6-7.)

## ANALYSIS

### I.      STANDARD OF REVIEW

Reviewing a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Court applies the same standard as under a motion to dismiss pursuant to Rule 12(b)(6).   *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).   Therefore, when considering a motion for judgment on the pleadings under Rule 12(c), the Court is required to "'accept as true all factual allegations set out in the complaint' and to 'construe the complaint in the light most favorable to the [plaintiff], drawing all inferences in [the plaintiff's] favor.'"   *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)).   Although a complaint need not contain "detailed factual allegations," it must contain sufficient factual allegations "to raise a right to relief above the speculative level."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   In addition to the pleadings, the Court may properly consider materials that are necessarily embraced by the pleadings.   *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

## II.      RES JUDICATA

In ascertaining the preclusive effect of a judgment, "[t]he law of the forum that rendered the first judgment controls the res judicata analysis." *St. Jude Med. S. C., Inc. v. Cormier*, 745 F.3d 325, 327 (8th Cir. 2014) (internal quotation marks omitted); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). Here, because the preclusive effect of a Minnesota state court judgment is at issue, the Court applies Minnesota law to the res judicata question.

Under Minnesota law, res judicata operates to bar subsequent litigation when "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Minch Family LLLP v. Buffalo–Red River Watershed Dist.*, 628 F.3d 960, 966 (8th Cir. 2010) (citing *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004)). The first factor is satisfied if the subsequent claim arises out of "the same nucleus of operative facts as the prior claim." *Banks v. Int'l Union Electronic, Elec., Technical, Salaried & Mach. Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004) (internal quotation marks omitted); *see also Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998) ("Regarding the 'same claims or causes of action' element of claim preclusion, we have stated that whether a second lawsuit is precluded turns on whether its claims arise out of the 'same nucleus of operative facts as the prior claim.'") (quoting *United States v. Gurley*, 43 F.3d

1188, 1195 (8th Cir. 1994)).   Res judicata "bars the relitigation of issues which were actually litigated or which **could** have been litigated" in the first action so long as the party against whom the earlier decision is being asserted had a "full and fair opportunity to litigate the issue." *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir. 1983) (emphasis in original) (internal quotation marks omitted); *see also State v. Joseph*, 636 N.W.2d 322, 327 (Minn. 2001).

There can be little dispute regarding the application of the second and third res judicata factors here.   With regard to the second factor, the parties in the Waseca County action were Thornes and the City of Waldorf; the parties in this action are Thornes and the City of Waldorf and various current and former City Council members, Mayors, and the City Clerk, who qualify as "privies" of the City. *See Minch Family*, 628 F.3d at 966 (under Minnesota law second factor is "the earlier claim involved the same parties or their privies"); *Ruple v. City of Vermillion, S.D.*, 714 F.2d 860, 862 (8th Cir. 1983) (holding that, where only the city and city manager were parties to earlier action and later action additionally included the mayor and four city council members, "[t]he newly named defendants are in privity with those who were defendants in the state court," as "they are so closely related to the state-court defendants, and their interests are so nearly identical, that it is fair to treat them as the same parties for purposes of determining the preclusive effect of the state-court judgment").[5]   With regard to the third

---

[5] The Eighth Circuit's decision in *Ruple* was distinguished by the Eighth Circuit in *Headley v. Bacon*, 828 F.2d 1272 (8th Cir. 1987), where it observed that "[n]ot all government employees and officials are in privity with the government," and that "even persons in such

(Footnote continued on next page.)

factor, under Minnesota law "for res judicata purposes, a judgment becomes final when it is entered in the district court and it remains final, despite a pending appeal, until it is reversed, vacated or otherwise modified." *Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, P.L.L.P., 732 N.W.2d 209, 221 (Minn. 2007). There is no dispute that the Waseca County District Court entered judgment on April 4, 2013, ordering the City to enforce Resolution 84 and declaring the Tyrholm Building to be hazardous, which constitutes a final judgment on the merits under Minnesota res judicata law. (*See* State Court Findings and Order 7 ("Let Judgment be Entered Accordingly" (capitalization omitted)).)

It is a closer question, however, whether that judgment adequately encompassed the issues raised in this action such that it bars the proceedings here. This implicates the first and fourth factors of the res judicata test under Minnesota law. The first – whether the earlier action involved the same set of factual circumstances – is not limited to situations in which both actions involved identical claims. Rather, "[t]he doctrine of res judicata dictates that any right, fact, or matter expressly or directly adjudicated on the merits before a court of competent jurisdiction is conclusively settled and 'may not be

---

(Footnote continued.)

clearly policy-making positions may not be in privity with the government." *Id.* at 1276. There, the plaintiff brought an action against police force officials after having brought a similar action against the city, and the court concluded that "the defendants in the present case were not in such clearly policymaking positions as to be the same sort of voice and hand of a municipality as its elected governing officials." *Id.* (internal quotation marks omitted). Here, the individual defendants are the individuals named throughout Thornes' complaint as the policymaking individuals who made the decisions to take the actions that form the basis of his complaint and implemented them, and thus are either actually the municipality's "elected governing officials" or are in "such clearly policymaking positions as to be the same sort of voice and hand of a municipality as its elected governing officials." *Id.* (internal quotation marks omitted).

relitigated by the parties to the previous action, whether the claim, demand, purpose or subject matter would or would not be the same as that in the previous litigation.'" *King v. Hoover Grp., Inc.*, 958 F.2d 219, 223 (8th Cir. 1992).  The Waseca County action involved distinct claims and a distinct posture from the instant action.  There the court considered the City's motion to enforce its declaration that the Tyrholm Building was hazardous and that it would demolish the building if Thornes failed to make the necessary repairs, as it was authorized to do by Minnesota Statute.  Here, Thornes brings claims against the City for violations of the U.S. Constitution and Minnesota common law for the City and its officials' actions in the events leading up to the City's Resolution 84 and the state court order.  Although distinct in posture and claims, however, the actions involve the same "nucleus of operative facts," *Banks*, 390 F.3d at 1052 – the events leading up to the demolition of the Tyrholm Building, including the alleged trespassing inspection, the City Council's resolutions, and the City's enforcement of the demolition order through the Waseca County action.  The bulk of the topics addressed by the factual allegations in the complaint are encompassed by the factual findings in the Waseca County order.  (*Compare* Am. Compl. ¶¶ 2-3 (detailing Thornes' purchase of the building), *with* State Court Findings and Order ¶ 19 (City Clerk testified to the same); Am. Compl. ¶¶ 4-6, 10-13, 15-21 (detailing ongoing communications and interaction between the City and Thornes in 2011 and 2012), *with* State Court Findings and Order ¶¶ 20, 26 (City Clerk and Mayor testified about the same); Am. Compl. ¶¶ 24-27 (detailing allegations regarding inspection, which Thornes alleges amounted to trespass), *with* State Court Findings and Order ¶¶ 21-25 (inspector testified, among other things,

that "he was able to conduct his inspection without going on Defendant's property"); Am.

Compl. ¶¶ 19, 31-35 (allegations regarding Resolution 84 and subsequent Waseca County

action), *with* State Court Findings and Order ¶¶ 6-16 (detailing procedural history of

resolution and motion for enforcement).)  Thus, Thornes' "newly asserted constitutional

claims are based on the same set of facts" as the facts before the Waseca County District

Court and this element of res judicata is satisfied.  *See Laase v. Cnty. of Isanti*, 638 F.3d

853, 857 (8th Cir. 2011) (finding first element of res judicata test met where plaintiff had

challenged automatic forfeiture of his vehicle pursuant to Minnesota statute in state court

and subsequently brought a federal court action under 42 U.S.C. § 1983 for violation of

the Fifth and Eighth Amendments).

Certainly, the specific **claims** Thornes raises here were not part of the Waseca

County action.  But "[r]es judicata applies equally to claims actually litigated and to

claims that could have been litigated in the earlier action," so long as the party has a full

and fair opportunity to litigate the issues, *Brown-Wilbert*, 732 N.W.2d at 220, and

Thornes' claims in the instant action could have been raised as counterclaims in the

summary enforcement action in Waseca County District Court.   Minnesota Statutes

§ 463.20 provides that if a property owner files an answer in a summary enforcement

proceeding under Chapter 463, "further proceedings in the action shall be governed by

the Rules of Civil Procedure for the District Courts," and those rules contemplate

counterclaims – both arising out of the transaction involved in the initial claim and not.

*See* Minn. R. Civ. P. 13.01 (rule governing compulsory counterclaims: "A pleading shall

state as a counterclaim any claim which at the time of serving the pleading the pleader

has against any opposing party, if it arises out of the transaction that is the subject matter of the opposing party's claim"); Minn. R. Civ. P. 13.02 (rule governing permissive counterclaims: "A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction that is the subject matter of the opposing party's claim"); *see also* Minn. R. Civ. P. 7.01 (rule on pleadings contemplating answer, counterclaims, and cross-claims).  The Minnesota Court of Appeals has observed that if a city orders the owner of a hazardous building to raze or remove the building, "the building owner may then comply with the order or file an answer under Minn. Stat. § 463.18," and that "[i]f an answer is filed, the matter is treated as a contested case heard by the district court."  *City of Mankato v. Dickie*, Civ. No. A10-720, 2011 WL 589613, at *2 (Minn. Ct. App. Feb. 22, 2011).  Therefore, the claims Thornes now raises could have been raised as counterclaims in the Waseca County action.  *Cf. id.* at *1 (observing that in summary enforcement hearing under Chapter 463 before the district court, the property owner "appeared with counsel and obtained leave to file an answer," and that in "his amended answer and counter-claim, [the owner] challenged the hazardous-building action as lacking a sufficient factual basis, alleged that he was denied due process of law in the proceedings, raised various constitutional challenges to the rental-licensing ordinance, and claimed that demolition of his home would constitute destruction of a historical resource in violation of the Minnesota Environmental Rights Act").[6]

---

[6] It could be argued that some of the bases of Thornes' claims could not have supported a claim that could have been raised in the Waseca County action because they did not occur until after that final judgment – for example, paragraphs 37 through 39 of Thornes' amended

(Footnote continued on next page.)

Here, Thornes had a full and fair opportunity to litigate his instant claims in the Waseca County action, even if he failed to take advantage of that opportunity. "The question of whether a party had a full and fair opportunity to litigate a matter generally focuses on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *Joseph*, 636 N.W.2d at 329 (concluding that, where party had "both the right and the opportunity to appeal," but chose not to, the fourth res judicata requirement was met); *see also Gahr v. Trammel*, 796 F.2d 1063, 1070 (8th Cir. 1986) (observing that "[a] party receives a fair opportunity to present the claims allegedly precluded if the party could have brought the claims in a proceeding that would satisfy the minimal procedural requirements of the due process clause"). Thornes had the opportunity to fully participate in the state court proceeding. As the Waseca County District Court found and Thornes does not contest, Thornes failed to file an answer in the Waseca County action. (*See* State Court Findings and Order ¶ 17.) Nor does he allege that notice of the proceeding was inadequate – rather, he

---

(Footnote continued.)

complaint in which he details the demolition of the Tyrholm building. However, the demolition of the building was the immediate consequence of the order in the state court judgment (and a foreseeable result based on the proceedings up until that point). Thus, these additional allegations do not add facts that undermine the Court's res judicata conclusion here. *Cf. Laase*, 638 F.3d at 857 (in context of automatic vehicle forfeiture under Minnesota statute, finding that "[b]ecause of th[e] automatic nature of forfeiture under the statute, the fact that state litigation over forfeitability has concluded adds nothing to the 'group of operative facts' that gives rise to Laase's state and federal excessive fines and takings claims" and "[t]o the extent Laase argues that his constitutional challenges to forfeiture were not ripe until state-court litigation over seizure and forfeitability concluded, his argument fails because forfeiture is automatic upon the determination of forfeitability.")

alleges that he **received** notice of the action.  (*See* Am. Compl. ¶ 31.)  Finally, the State Court Findings and Order indicates that he attended and participated in the hearing – requesting a delay on account of this federal action, cross-examining the City's witnesses, and even presenting his own witness.  (*See* State Court Findings and Order ¶¶ 1-4, 18.)  Thus, the Court concludes that Thornes had a "full and fair opportunity to litigate" the claims he now presents.  *Cf. Gahr*, 796 F.2d at 1070 (concluding that "[t]he state proceedings in this case clearly met the requirements of the due process clause," where the plaintiff had the opportunity to present arguments on the record, was represented, submitted evidence, called witnesses, and cross-examined witnesses).

The Court therefore concludes that all four requirements of res judicata are met.  Because the Waseca County action involved the same factual circumstances, the same parties, and a final judgment on the merits, and because Thornes could have litigated all of the issues he now brings in this action, his instant claims are barred by res judicata.  The Court will therefore dismiss all claims with prejudice.  *See Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 715 N.W.2d 484, 487 (Minn. Ct. App. 2006) ("Under the doctrine of res judicata, a final judgment on the merits is an absolute bar to a second suit for the same cause of action and is conclusive, not only as to every matter actually litigated, but also as to every matter that might have been litigated."), *aff'd on other grounds*, 732 N.W.2d 209 (Minn. 2007).  Because the Court concludes that this action must be dismissed with prejudice, the Court need not address the parties' remaining arguments regarding Defendants' motion for judgment on the pleadings.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings [Docket No. 34] is **GRANTED**. This matter is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   September 29, 2014
at Minneapolis, Minnesota.

_s/ John R. Tunheim_____

JOHN R. TUNHEIM
United States District Judge